EMILIO SANCHEZ Y. DOLZ, RESPONDENT, *v.* NATHAN B. MORRIS, TIMOTHY KELLY AND OTHERS, APPELLANTS.

*Testimony of experts — form of questions — Tonnage of vessel given in charter-party — when not conclusive.*

Upon the trial of this action, brought to recover damages for a breach of a char-ter-party, the principal question was whether or not the ship, which had been disabled by a storm while near the port of Vera Cruz, could have put into any of the ports in the Gulf of Mexico or in the southern Atlantic States. Upon the trial, experts, called on behalf of the plaintiff, were asked, against the defendant's objection and exception, the following question : " Under the state of facts mentioned in that deposition what ports could the captain have made in the Gulf of Mexico?" They were also asked other questions to the same effect. *Held,* that it was error to admit the questions, as they allowed, and compelled each witness to determine for himself what facts were proved by the deposition, and thus usurp the functions of the jury.

The charter-party was made between J. L. Robart, master and agent for owners of brig Ottawa, " of the burden of one hundred and fifty-eight tons or there-abouts," and the plaintiff. In an action by the latter to recover for a breach of the contract, *held,* that he was entitled to show, for the purpose of enhancing the damages, that the brig was in reality of 250 tons burden.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

This action was brought to recover damages for a breach of a charter-party, entered into between " John L. Robart, master and

agent for the owners of the Br. brig Ottawa, of Parsboro, N. S., of the burden of one hundred and fifty-eight tons or thereabouts," and the plaintiff.

*Erastus Cooke*, for the appellants.

*William W. Goodrich*, for the respondent.

DANIELS, J. :

The action was brought to recover damages for the breach of a contract of charter-party, by which the brig Ottawa was chartered to the plaintiff to proceed from Rockland lake with a cargo of ice to Vera Cruz, and to take on board another cargo there or at some other safe port in Mexico, and return therewith to New York or Boston.

After discharging her outward cargo at Vera Cruz, the master of the vessel was directed to proceed to Tecohitla, not far from Vera Cruz, to receive the homeward cargo. On her way there and while awaiting the arrival of a pilot she encountered a severe storm, which drove her from the vicinity of that port, and as it was claimed in behalf of the defendants, her owners, so far disabled her as to render her nearly helpless and incapable of entering any port upon the coast for the purpose of refitting. The deposition of the master tended to support that view of the facts, and to show that the first harbor she was able to enter was Liverpool, in Nova Scotia.

She was then repaired and refitted and returned to New York, and the captain informed the plaintiff that he wished to continue the voyage, but was answered that there was then no cargo in Mexico for him. The vessel was then in a condition to go on and perform the remaining portion of the charter.

The defense in the case was predicated upon the evidence given by the master of the vessel, and the plaintiff endeavored to avoid the effect of it by showing by persons experienced in the navigation of the Gulf of Mexico and with the adjacent waters and harbors, that the vessel, by proper and skilful management, might have entered one of the ports along the route taken by her after being driven away from Tecohitla, where her injuries could have been repaired and she enabled to return for her homeward cargo. And

for that purpose certain questions were propounded to those witnesses, and answers received from them which are urged in the defendants' behalf as being so far improper as to require another trial of the action for their correction. If the evidence in this manner elicited was incompetent, then, as it appears to have been essential to the support of the plaintiff's case, the result indicated will necessarily follow from the allowance of its introduction upon the trial.

The evidence objected to consisted in part of the opinions of the plaintiff's witnesses, as to what might have been done with the vessel by the way of making a convenient harbor under the circumstances mentioned in the deposition. It has not been urged, as it could not be with any propriety, that the opinions of such witnesses may not be taken upon subjects connected with the science or practice of navigation. *Walsh* v. *Washington Ins. Co.* (32 N. Y., 427, 443). But the objection taken is that they were allowed to state their conclusions in terms so broad as to comprehend the province of the jury, as well as the subjects appearing to be within the legitimate scope of the rules of evidence.

The first of these inquiries relied upon as objectionable was made in the following form: " Under the state of facts mentioned in that deposition, what ports could the captain have made in the Gulf of Mexico ?"

The objection to this in brief was that the question was improper, but the court overruled it and allowed the answer to be given. To that the defendants excepted, and the witness answered in the following words: "According to my opinion he could have made any of the ports from Galveston to Key West; Galveston, New Orleans, Mobile, Pensacola and Key West, the latter of which he could have made perfectly easy; there are quite a number of small ports he could have made, but those are the larger ports, which any captain is acquainted with." A similar inquiry was made of another witness. The question propounded for that purpose to him was as follows: " With a vessel in the condition stated by Captain Roberts, and these winds and currents as stated in that deposition, with a vessel in the position named by him, would there have been any difficulty in that vessel reaching other ports in the Gulf of Mexico ?"

This was objected to because it involved " an inquiry into the

truth or falsity of at least some portion of that testimony," and called "upon the witness to pass upon the testimony of the person upon whose evidence he predicates his opinion." The objection was overruled and the defendants excepted. The witness thereupon answered, "I do not think there would be any difficulty at all in making the northern part of the bay out of the southward of Vera Cruz making Sisal from eastward, Frontaro, Minatiltain, Campeche, New Orleans, Mobile, Pensacola, Key West, Havana, Matanzas, Cardenas, any port in the United States, Savannah or Nassau."

A similar inquiry was made of a witness who heard part of the deposition read, and also read a portion himself. That was objected to because the question did not embody the entire condition of the vessel. It was disposed of in the same way as the other objections had previously been. And the witness answered that the vessel ought not, and generally would not have any trouble in making any Mexican ports to the westward of Pensacola.

These inquiries in the form in which they were allowed to be made do not seem to have been proper, and the impropriety of such a course of examination was plainly illustrated by the cross-examination of the witness answering the second of these questions.

For upon being asked whether he took the statements of Roberts as true, to form the basis of his opinion, he answered that he did not take any thing of his story at all, but thought he could have got a vessel into one of those ports according to his judgment.

As they were propounded, the questions required the several witnesses to gather the facts for themselves which each might regard as proved by the deposition. A finding of facts claimed to be established was first essential, but without any disclosure of them by the witness, his answer was taken embodying his conclusion upon them. What facts the witness might consider proven by the evidence he was required to decide for himself, and then express his opinion as to their effect. But what that was founded upon could not possibly be known when the answer was given by him. Diversities of views would ordinarily be entertained by different persons under such circumstances. One might very well and very naturally accept as proved what another would as surely reject. That would be the result of the peculiar constitution of the human mind and the experiences of different persons. And it would create different bases for similar

answers. Without confining the attention to any certain state of supposed or supposable facts, each witness was allowed to answer upon what he alone considered to be the effect of the deposition of the captain. He was placed at liberty to construe it for himself and then permitted to declare his opinion upon that construction.

In effect the entire scope of the defendants' defense was placed under the inspection of the witness, and he was allowed to state whether in his judgment the defense had been established. The witness was in this manner permitted to usurp the province of the jury and in part, that of the court. The course pursued has not been sanctioned by authority, and must have been injurious to whatever rights the defendants had in the case.

The true course to be taken is that indicated by Judge ALLEN in his opinion, in the case of *Filer* v. *The New York Central R. R. Co.* (49 N. Y., 42), where it was said that " some latitude must necessarily be given in the examination of medical experts and in the propounding of hypothetical questions for their opinions, the better to enable the jury to pass upon the questions submitted to them. The opinion is the opinion of the expert, and if the facts are found by the jury as the counsel by his questions assumes them to be, the opinion may have some weight; otherwise, not. It is the privilege of the counsel in such cases to assume within the limits of the evidence, any state of facts which he claims the evidence justifies, and have the opinion of experts upon the facts thus assumed." (Id., 46.)

Upon an examination conducted in that manner, the court and jury can see what the opinion has been based upon, and proper effect can be given to it accordingly. If the facts assumed are not found as established by the jury, then the opinion will be deprived of all weight in the case; but if they are found, then appropriate effect will necessarily be awarded to it, and the opinion given will aid the jury in solving the controversy. That cannot be the case where the witness may be allowed to roam through the evidence for himself, and gather the facts as he may consider them to have been proved, and then state his conclusion concerning them. The uncertainty of the judgment of the witness as to the effect of the proof must render his opinion upon it alike uncertain, when that is allowed to be given.

Whether it would be adapted to the case or the defense as the

jury might consider it to have been established in their view of the evidence, there would be no possible mode of determining. If such an opinion as was allowed to be given in this case were to be followed at all, it could very well proceed upon the assumption of the truth of a different state of facts from that to which it would be finally applied by the jury.

And no such mode for the toleration of injustice could be devised.

In *Sills* v. *Brown* (9 Car. & P., 601), which was an action for a collision, the witness was asked whether, having heard the evidence in the cause, he thought the conduct of the captain of the brig was right or not. This was excluded as improper and the witness was limited in his answer to what he considered was the duty of her captain under certain specified circumstances. (See also *People* v. *Lake*, 2 Kernan, 358.) In the case of The Clement (2 Curtis, U. S. Rep., 363) a similar point was presented and decided in the same way. It was there said in the course of the opinion, that "a question was made at the hearing concerning the admissibility of the testimony of experts in answer to questions proposed to them, not on a given state of facts, but upon the depositions of the witnesses who were present at the collision. I am of opinion such evidence is not admissible." (Id., 369.) *Crofut* v. *Brooklyn Ferry Co.* (36 Barb., 201) and *Taylor* v. *Monnot* (4 Duer, 116) were decided upon a similar view of the law of evidence. In the form in which these questions were put upon the trial of this cause they should have been rejected.

The statement in the charter that the vessel was of the burthen of 158 tons or thereabouts was merely added for the purpose of completing the description given, in order to ascertain her identity. And it did not preclude the proof offered by the plaintiff to prove the extent of her carrying capacity, for the purpose of showing the damages sustained by him in consequence of the failure to perform the stipulations of the charter.

The verdict seems to have been for a greater sum than that which the evidence appeared to warrant. But as another trial of the action will be necessary because of the improper evidence already considered, a minute examination into the excess will not be required. That will be avoided if the plaintiff should recover another verdict against the defendants, by excluding from the recovery the benefits secured by

PEOPLE ex rel. SMITH *v.* COMRS. OF TAXES.    207

First Department, March Term, 1877.

means of the performance of the outward voyage ; and the expenses which would have been necessarily attendant upon the second, so far as the plaintiff would have been subjected to them, in case it had been performed according to the stipulations of the charter.

Both the order denying the motion for a new trial and the judgment should be reversed, and a new trial ordered with costs to the appellants, to abide the event.

Davis, P. J., and Brady, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.